UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES MADISON PROJECT, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-1478 (ABJ) |
| | ) | |
| DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

This case arises out of a Freedom of Information Act request by plaintiffs Shane Harris, a reporter for the publication The Daily Beast, and the James Madison Project, seeking records "pertaining to the revelations that former Secretary of State Hillary Rodham Clinton's private attorney, David Kendall, had retained personal control over a thumb drive containing e-mails which have been (or might ultimately be) deemed to contain classified information." Compl. [Dkt. # 1] ¶ 6.  Plaintiff requested records from the time period of January 21, 2013 to the date of its request, August 12, 2015. *Id.* ¶ 7.

Plaintiffs filed this lawsuit on September 10, 2015, after the State Department did not respond to their FOIA request within the statutorily-required twenty-day period. Compl. ¶ 13; *see* 5 U.S.C. § 552(a)(6)(A).  The State Department responded to the suit and the parties agreed to a stipulated production schedule. *See* Def's. Status Report [Dkt. # 12].  All in all, defendant located approximately 180 responsive records; it released approximately 60 in full and 90 in part, and it withheld the rest. *See* Decl. of Eric F. Stein [Dkt. # 20-1] ("Stein Decl.") ¶¶ 6–10, 59.

Once the State Department completed its production, it moved for summary judgment. Def.'s Mot. for Summ. J. [Dkt. # 20] ("Def.'s Mot."); Mem. of P. &. A. in Supp. of Def.'s Mot.

[Dkt. # 20] ("Def.'s Mem."). Plaintiffs oppose the motion, arguing that the agency's searches were inadequate, and they challenge defendant's refusal to produce the name of a particular State Department employee. Mem. in Opp. to Def.'s Mot. [Dkt. # 21] ("Pls.' Opp."). Because the Court finds that defendant's searches were inadequate, it will deny the motion for summary judgment in part and remand the matter back to the State Department. But since the single challenged withholding is justified, the Court will also grant the government's motion in part.

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable

of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236,

1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw

reasonable inferences 'in the light most favorable to the party opposing the summary judgment

motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States

v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).  "Summary judgment may be granted on

the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity

of detail rather than merely conclusory statements," and when "they are not called into question

by contradictory evidence in the record or by evidence of agency bad faith."  *Judicial Watch, Inc.

v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't

of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006).

## ANALYSIS

FOIA requires the release of government records upon request.  Its purpose is "to ensure

an informed citizenry, vital to the functioning of a democratic society, needed to check against

corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire &

Rubber Co.*, 437 U.S. 214, 242 (1978).  At the same time, Congress recognized "that legitimate

governmental and private interests could be harmed by release of certain types of information and

provided nine specific exemptions under which disclosure could be refused."  *FBI v.

Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918,

925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right

to know and the government's legitimate interest in keeping certain information confidential."),

citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  The Supreme Court has

instructed that "FOIA exemptions are to be narrowly construed."  *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must show that any information withheld logically falls within the claimed statutory exemption. *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 7 (D.C. Cir. 2014), quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984). "[W]hen an agency seeks to withhold information, it must provide a 'relatively detailed justification'" for the withholding, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007), quoting *King v. DOJ*, 830 F.2d 210, 219 (D.C. Cir. 1987), through a *Vaughn* Index, an affidavit, or by other means. *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994).

## I.    Defendant has not adequately justified its searches for responsive records.

### A.    Legal Standard

When an agency's search is questioned, it must show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011)*,* quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999); *see also Oglesby*, 920 F.2d at 68; *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

To demonstrate that it has performed an adequate search for documents responsive to a FOIA request, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F. Supp. 2d at 91.

To meet these requirements, the affidavit must at least include the agency's "rationale for searching certain locations and not others." *Defs. of Wildlife*, 623 F. Supp. 2d at 92; *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (affirming the grant of summary judgment where the agency provided a detailed declaration articulating the search process).  Agency affidavits attesting to a reasonable search "are accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), that can be rebutted "with evidence that the agency's search was not made in good faith," *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001), or when a review of the record raises substantial doubt about the adequacy of the search effort. *Valencia-Lucena*, 180 F.3d at 326; *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

An agency's declarations "need not 'set forth with meticulous documentation the details of an epic search for the requested records,'" *Defs. of Wildlife*, 623 F. Supp. 2d at 91, quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), but they should "describe what records were searched, by whom, and through what processes." *Id.*, quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994).  Conclusory assertions about the agency's thoroughness are not sufficient. *See Morley v. CIA*, 508 F.3d 1108, 1121–22 (D.C. Cir. 2007).

**B.**     **There are substantial doubts about the adequacy of the agency's searches in this case.**

To describe its search for records in this case, the State Department proffered the declaration of Eric F. Stein, the Acting Co-Director of the Office of Information Programs and Services at the State Department.  *See* Stein Decl.  Stein is the State Department official "immediately responsible for responding to requests for records" under FOIA. *Id.* ¶ 1.  The State Department does not conduct centralized searches for records; it is the responsibility of Stein's

office to "determine which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested," based on its institutional knowledge. *Id.* ¶ 12. In this case, Stein's team determined that the following components were reasonably likely to have documents responsive to plaintiffs' request: the Bureau of Diplomatic Security, the Office of the Undersecretary for Management, the Bureau of Administration, the Office of the Legal Advisor, and the Bureau of Information Resource Management. *Id.* ¶ 14. The declaration avers that no other component was reasonably likely to have responsive records. *Id.*

Once the appropriate offices have been identified, the State Department "relies on the knowledge and expertise of the employees of each bureau/office/post to determine the files and locations reasonably likely to house responsive records and the best means of locating such records," because the "employees are in the best position to know how their files are organized." Stein Decl. ¶ 15. The agency does not dictate the search terms to be used by the various offices, because the employees in each component "are also in the best position to determine which search terms would yield potentially responsive records." *Id.* So it is necessary to assess the adequacy of the search undertaken by each office.

### 1. The search of the Office of the Legal Advisor

The Office of the Legal Advisor ("OLA") "furnishes advice on all legal issues, domestic and international, arising in the course of the [State] Department's work." Stein Decl. ¶ 16. The OLA records management officer who had knowledge of both the request at issue and the component's records systems, determined that the only components of OLA reasonably likely to maintain responsive records were the Executive Office, the Acting Legal Adviser and the Deputy Legal Adviser, and the Office of Management. *Id.* ¶ 17.

The records management officer in the Executive Office searched Content Server, a "state-of-the-art electronic records management system that permits full-text searches of documents

uploaded to the system for permanent retention," using the search terms "David AND Kendall" or "Kendall" or "drive" or "thumb" or "Iron Key," during the time period January 1, 2015 to December 1, 2015.  Stein Decl. ¶ 18 & n.3.  And a paralegal specialist searched the Acting Legal Adviser's and Deputy Legal Adviser's unclassified and classified email records using these search terms:  "Kendall & Records" or "Kendall & Classified" or "Kendall & Iron Key" or "Kendall & Thumb drive" or "Kendall & Turner" or "Kendall & Preservation."  Stein Decl. ¶¶ 19–20.  While the FOIA request called for records from January 21, 2013 to August 12, 2015, Compl. ¶ 7, the Content Server search was limited to the time period of January 1, 2015 to December 1, 2015, Stein Decl. ¶ 18, and the paralegal specialist's search was limited to the time period of January 1, 2015 to December 7, 2015 for the Deputy Legal Advisor's files, and from January 1 to December 11, 2015 for the Acting Legal Advisor's files.  Id. ¶¶ 19–20.

The Office of Management component of the OLA also conducted a number of searches. The Office of Management Assistant Legal Adviser searched her unclassified emails using the search term "Kendall," with no date restriction.  Stein Decl. ¶ 21.  An Office of Management Attorney-Adviser searched her paper files, as well as her classified and unclassified email records, her electronic drive, and the Legal Adviser section of the Diplomatic Security Service shared drive using the search terms "Kendall" and the last name of the Chief of the Program Applications Division in the Office of Information Security for the Diplomatic Security Service, with no date restriction.  Id. ¶ 22.  Another Attorney-Adviser in the same office searched her classified and unclassified emails, her individual electronic drive, and the Appropriations folder on the shared drive, using no date restriction and the search terms "HRC" or "FOIA" or "Clinton e-mail" or "Kendall" or "Kendal."  Id. ¶ 23.  And a paralegal specialist searched an Attorney-Adviser's paper files, as well as the Attorney-Adviser's unclassified email records, individual electronic drive, and

office shared drive, using the search terms "Kendall" or "thumb" or "safe" or "server" or "Clintonemail" or "Connolly," during the time period of January 1, 2013 to April 26, 2016. *Id.* ¶ 24.

### 2.    The search of the Undersecretary for Management

The Undersecretary for Management "oversees the activities of [ten] bureaus and offices that are responsible for management improvement initiatives; security; the Department's information technology infrastructure; support services for domestic and overseas operations; consular affairs; and personnel matters, including recruitment, career development, training, medical services, and retirement programs." Stein Decl. ¶ 26.

A Senior Advisor to the Undersecretary searched her own records, the Under Secretary's unclassified email records, and Everest, a Microsoft SharePoint based system used to "task, track, control and archive documents containing substantive foreign policy information passing to, from, and through the offices of the Secretary of State, the Deputy Secretaries of State and other Department principal offices." Stein Decl. ¶ 27 & n.4.  Those searches were conducted using the search terms "David Kendall," "Hillary Clinton," "thumb drive," "classified documents," and "retention of classified documents," with no date restriction. *Id.* ¶ 27.

### 3.    The search of the Bureau of Administration

"The Bureau of Administration provides support programs to the Department of State and U.S. embassies and consulates." Stein Decl. ¶ 29.  The Office of Global Information Services within the Bureau of Administration is responsible for, among other things, "administering the Department's records management, privacy, classification, declassification, and public access programs, and serving as the primary point of contact for anyone seeking access to Department records." *Id.* ¶ 30.

The Office of Global Information Services is itself comprised of a number of components, including the Office of Information Programs and Services ("IPS"). Stein Decl. ¶ 30. An analyst who was knowledgeable about plaintiffs' FOIA request within IPS determined that the Deputy Assistant Secretary of the Office of Global Information Services, and the Deputy Director of IPS, were likely to have responsive records. *Id.* ¶ 31. The Deputy to the Assistant Secretary searched his unclassified email records using the search term "Kendall" during the time period of January 1, 2015 to November 12, 2015. *Id.* ¶ 32. The Deputy Director of IPS searched his unclassified email records and electronic files using the search terms "David Kendall" or "Kendall," or the last name of the Chief of Program Application Division in the Bureau of Diplomatic Security's Office of Information Security, between January 1, 2015 and November 9, 2015. *Id.* ¶ 33. The Stein Declaration explains that a litigation analyst "also searched another e-mail account identified as possibly containing responsive records," but "[n]o responsive records were found in th[at] account." *Id.* ¶ 34.

4.     The search of the Bureau of Diplomatic Security

"The Bureau of Diplomatic Security ('DS') is responsible for providing a safe and secure environment for the conduct of U.S. foreign policy." Stein Decl. ¶ 39. The Freedom of Information and Privacy Office within DS "reviews incoming FOIA requests, determines which DS components are reasonably likely to have responsive records, and then tasks those components with performing searches." *Id.*

In this case, a program analyst in the DS FOIA office determined that the only DS component reasonably likely to have responsive records was the Program Applications Division in the Office of Information Security. Stein Decl. ¶ 39. That office is "responsible for the development, coordination, training, and implementation of plans, policies, and procedures necessary to safeguard Department global assets, personnel, information, and property," and

instructors from that office "train Department employees and contractors in the basics of protecting classified national security information." *Id.* ¶ 40.  The Division Chief of the Program Applications Division and a policy analyst in that office searched the Division Chief's unclassified and classified email records, and the unclassified and classified shared drives, using the search terms "Clinton" or "Kendall" or "Thumb drive" or "information" or "server" for the time period between January 21, 2013 and November 3, 2015.  *Id.* ¶ 41.

### 5.     The search of Information Resource Management

"The Bureau of Information Resource Management ('IRM') is responsible for the rapid and secure delivery of the knowledge resources and Information Technology services needed for the Department's diplomatic team worldwide to accomplish the foreign affairs mission of the United States."  Stein Decl. ¶ 36.  The Stein Declaration explains that an "IRM Program Analyst who was knowledgeable of both the FOIA request at issue and IRM's records systems determined that the IRM Front Office was the only IRM office reasonably likely to have responsive material," but that a search of the Front Office for the search term "Kendall" between January 1, 2015 and November 6, 2015 yielded no responsive documents.  *Id.* ¶¶ 37–38.

### C.     The searches were inadequate.

Plaintiffs challenge the adequacy of the search, arguing that the Stein Declaration "describes a set of searches that are inconsistent with each other for no particularized reason." Pls.' Opp. at 4.  They complain that while three different components of the Office of Legal Adviser were searched, the methodology of each search "differed for no particular reason." *Id.* at 5.  And while plaintiffs concede that "there may be valid and legitimate reasons why different individuals in different components of the same office might use differing methodologies, search terms and date restrictions," they argue that "the Stein Declaration provides absolutely no context for *why* that was done in this context."  *Id.* at 6.  Plaintiffs oppose defendant's motion for summary

judgment, and they request discovery pursuant to Federal Rule of Civil Procedure 56(d) to explore

the reasoning behind the choices made in conducting the searches.  Rule 56(d) Decl. of Bradley P.

Moss, Esq. [Dkt. # 21-1] ("Moss Decl.") ¶¶ 3–6.  Since the Court agrees that the declaration is

inadequate and the matter will be remanded to the agency, the Court need not take up the request

for discovery at this time.  Discovery is generally inappropriate in a FOIA case in any event.  *See,*

*e.g., Elkins v. FAA*, 103 F. Supp. 3d 122, 132 (D.D.C. 2015); *Schrecker v. DOJ*, 217 F. Supp. 2d

29, 35 (D.D.C. 2002).

The State Department invokes the presumption of good faith that usually attaches to

government declarations in FOIA cases.  *See* Reply in Supp. of Def.'s Mot. [Dkt. # 23] ("Def.'s

Reply") at 2, quoting *Baker & Hostetler, LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir.

2006).  And it maintains that courts in this jurisdiction have "repeatedly affirmed State's process

for assigning decision-making about search terms and records systems to knowledgeable officials

in each bureau or office."  *Id.* at 3.  But the agency misses the point:  the problem with the

declaration in this case is that it is conclusory, and the searches are deficient because the agency

– for no discernable reason – searched different data sets using different search terms and different

date restrictions, even within the same bureau or office.  So the agency must do more to explain

its methodology, and it must explain its reasoning more clearly.  And it must solve the glaring date

restriction issue – the FOIA request called for records between January 21, 2013, and the date of

the acceptance of the FOIA request, August 24, 2015, *see* Compl. ¶¶ 7, 11, but several of the

searches were limited to 2015.  *See* Stein Decl. ¶¶ 18–20, 32–33, 38.

The agency protests that it should not be required to provide "additional declarations from

each of the numerous State employees across all of the offices and bureaus searched."  Def.'s

Reply at 4.  The agency is correct that, in a FOIA case, "the affidavit of the officer ultimately

responsible for the supervision of the FOIA search is sufficient." *Trans Union*, 141 F. Supp. 3d at 68–69; *see also* Def.'s Reply at 4.   But the agency official responsible for coordinating the supervision of the FOIA search would be wise to ensure on remand that the search terms are more uniform, and that it is clear from the declaration that the terms are reasonably calculated to uncover relevant documents.

So the Court will remand the matter to the agency to conduct renewed searches, and to provide more detailed declarations that do not rely simply on the sort of conclusory statements that permeate the Stein Declaration, noting that various officers at the State Department "determined" where responsive records might be found, without explaining why those components, but not others, might have responsive documents.  *See, e.g.*, Stein Decl. ¶¶ 14, 17, 31, 37.[1]

## II.   Defendant's invocation of exemption 7(C) to protect a single name in a single document is justified.

With respect to the documents that have been identified, plaintiffs' challenge to the agency's claimed withholdings is extremely limited.  *See* Pls.' Opp. at 8–9.  Plaintiffs seek the identity of a single individual, referenced in Document Number C05963234:

> At the bottom of page 1 of that document is an e-mail from the Chief, Program Applications Division of the Office of Information Security to Gregory Starr, the Assistant Secretary of [Diplomatic Security].  The name of that "Chief" is redacted under Exemption 6 and Exemption 7(C) and it is that name that [plaintiffs] seek.

*Id.*; *see also* Ex. 2 to Pls.' Opp. [Dkt. # 21-2] (attaching a copy of the challenged e-mail).

---

1    The lengthy and opaque acronyms that permeated the Stein declaration and the briefs were not particularly helpful.  *See, e.g.*, Stein Decl. ¶ 31 (describing the search of "A/GIS/IPS/PP/LA"); *id.* ¶ 39 (describing the efforts of the "DS/MGT/FOIA-PA" group); *see also* D.C. Circuit Handbook of Practice & Internal Procedure (2016) at  41 ("In briefs the use of acronyms other than those that are widely known should be avoided.").

A.      **Legal Standard**

Defendant claims that the name of the Division Chief is protected by Exemptions 6 and

7(C).  *See* Def.'s Mem. at 25-31.  Exemption 6 shields from mandatory disclosure "personnel and

medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) protects information that

was (1) compiled for law enforcement purposes, if (2) the disclosure "could reasonably be

expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).  Because

Exemption 7(C) involves a lower threshold than the one set forth in Exemption 6, which requires

a "*clearly* unwarranted invasion" of privacy, *see id.* § 552(b)(6) (emphasis added), the Court will

address Exemption 7(C) first.  *See DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749,

756 (1989) (comparing Exemptions 7(C) and 6); *PETA v. NIH*, 745 F.3d 535, 541 (D.C. Cir. 2014)

(same).

Exemption 7(C) authorizes an agency to withhold law enforcement records if disclosure

"could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(7)(C).  In determining whether this exemption applies to particular information,

the Court must balance an individual's interest in privacy against the public interest in disclosure.

*See ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011).  The privacy interest at stake belongs to the

individual, not the government agency, *see Reporters Comm.*, 489 U.S. at 763–65, and an

individual has "a strong interest in not being associated unwarrantedly with alleged criminal

activity."  *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984).  "[T]he only public interest relevant

for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about

what their government is up to.'"  *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992), quoting

*Reporters Comm.*, 489 U.S. at 773.  It is a FOIA requester's obligation to articulate a public interest

sufficient to outweigh an individual's privacy interest, and the public interest must be significant.
*See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

### B.     Defendant's invocation of exemption 7(C) is warranted.

The government explains that the Division Chief at issue works in the Bureau of

Diplomatic Security, which is the security and law enforcement arm of the State Department.

Def.'s Mem. at 29.  This particular employee is responsible for "develop[ing], implement[ing],

and overseeing policies and procedures for the safeguarding of national security information," and

with respect to the particular document at issue, the employee "was carrying out one of [Diplomatic

Security's] core law enforcement functions of ensuring that national security information was

secured."  Decl. of Bill Miller [Dkt. # 23-1] ("Miller Decl.") ¶ 6.  Plaintiffs seem to concede the

law enforcement purpose in this case, *see* Pls.' Opp. at 7–10, and the Court agrees with the agency

that the Division Chief was acting in a law enforcement capacity with respect to this particular

document.

So the only remaining question is whether the agency privacy's interest – that "the personal

information of [Diplomatic Security] and law enforcement personnel may be of particular interest

to non-U.S. actors who may seek to use that information to the detriment of U.S. security," *Vaughn*

Index [Dkt. # 20-2] at 15, is outweighed by any public interest value in the Division Chief's name.

Plaintiffs argue that there is "particular public interest value" in the name of the employee:

> It is in that [document] – particularly in the portion of the thread reflecting
> an e-mail from the "Chief" to Mr. Starr, dated June 30, 2015 at 3:40pm
> – that for the very first time there is reference to whom within State (namely,
> the "Chief") made the original security recommendation justifying
> providing David Kendall . . . with a classified safe. . . . Although
> Undersecretary of State for Management Patrick Kennedy made the final
> determination on the matter, . . . it was this unidentified "Chief" who
> apparently made the substantive recommendation upon which that final
> determination was based.

Pls.' Opp. at 9.  As plaintiffs put it, the State Department's actions were "unprecedented," and that "for reasons passing understanding," the accommodation of providing a classified safe for Mr. Kendall "was rather quickly afforded to the private lawyer of former Secretary of State Hillary Clinton," which "raised all kinds of still-unresolved questions about favoritism afforded to a former senior Government official." *Id.* at 10.

Whatever conclusions plaintiffs wish to draw from the State Department's actions in this case, plaintiffs have not established that the disclosure of the employee's name is a matter of significant public interest.  And for the reasons that follow, the Court concludes that any public interest in the name of the particular State Department official who initially recommended that Mr. Kendall be provided with the safe is outweighed by the employee's interest in personal privacy. *See Favish*, 541 U.S. at 172.

Plaintiffs are now in possession of the information that they sought:  that Undersecretary of State for Management Patrick Kennedy approved the use of a classified safe.  And while plaintiffs speculate that the Division Chief may have had "political connections" to Secretary Clinton, Moss Decl. ¶ 10, that speculation does not "establish more than a bare suspicion . . . [of] government impropriety," which is insufficient to establish a public interest. *See Favish*, 541 U.S. at 174.  The D.C. Circuit has recognized that "[t]he identity of one or two individual relatively low-level government wrongdoers, released in isolation, does not provide information about the agency's own conduct," and therefore "there is no public interest in [the] release" of that information. *Beck v. DOJ*, 997 F.2d 1489, 1493 (D.C. Cir. 1993); *see Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998) (affirming the withholding of information about an investigation into a "staff-level government lawyer in connection with the possibly unauthorized and perhaps illegal release of information to the press."); *Stern*, 737 F.2d at 92 (stating that where the public interest

in individual employees' identities "is grounded only in a general notion of public servant accountability, the employees' privacy interest in nondisclosure is paramount and protects their identities from being revealed").

The Division Chief in this case appears to be a mid-level career employee at the State Department – he is neither a political appointee nor a senior executive. *See* Miller Decl. ¶ 5 ("The Division Chief . . . is a full-time employee and reports directly to the Director of the Office of Information Security and, at the time the document in question was dated, was a GS-14 level employee."). The agency withheld just his name; it released the Division Chief's title, the names of the higher-level officials with whom he communicated, and the substantive information in the documents in which his name appears. So the Court finds that any public interest in the name of a mid-level manager at the State Department is outweighed by the employee's interest in privacy, especially where his recommendation was ratified by more senior managers whose names have been made public.[2]

---

2      Indeed plaintiffs own FOIA request "pre-emptively waived any objection to the redaction of the names of any U.S. Government officials below a GS-14 position or who otherwise were not acting in a supervisory position." Compl. ¶ 8.

## CONCLUSION

For all of those reasons, the Court will deny the State Department's motion for summary judgment as to the adequacy of the search for records, but it will grant the agency's motion as to the withholding of the name of the Division Chief.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 30, 2017